MILLER v MIDWEST FOUNDRY CORPORATION

1. WORKMEN'S COMPENSATION—APPEAL BOARD—FIVE-MAN PANEL—
   FOUR-MAN PANEL—STATUTES.

   Assignment of a case before the Workmen's Compensation Appeal Board to a four-man panel instead of the five-man panel required by an amended statute was not reversible error where the employer was not deprived of a fair hearing and failed to object to the improper impaneling until after an adverse decision was reached; failure to object was tantamount to waiver of the right to a five-man panel and consent to the four-man panel (MCLA 418.261).

2. WORKMEN'S COMPENSATION—OPEN AWARD—DISABILITY—SPECIFIC
   INJURY—OCCUPATIONAL DISEASE.

   A reasonable prediction of continuing disability is required for an open award of workmen's compensation whether the disability is caused by a specific injury or by an occupational disease.

3. APPEAL AND ERROR—WORKMEN'S COMPENSATION—APPEAL BOARD—
   FINDINGS—EVIDENCE.

   Findings of the Workmen's Compensation Appeal Board must be affirmed where any evidence supports the findings.

4. WORKMEN'S COMPENSATION—WAGE-EARNING CAPACITY—LOSS OF
   WAGES.

   Loss of wage-earning capacity and not the actual loss of wages is compensable under the Workmen's Compensation Act.

5. WORKMEN'S COMPENSATION—EARNING CAPACITY—EMPLOYER'S LIA-
   BILITY—EARNINGS FROM OTHER EMPLOYMENT—PART-TIME EM-
   PLOYMENT.

   Earnings from part-time farming of a claimant who was injured while employed in industry cannot be used to determine his wage at the time of injury, nor can his earnings from part-time

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 58 Am Jur, Workmen's Compensation § 522 et seq.
[2] 58 Am Jur, Workmen's Compensation §§ 246, 256.
[4, 5] 58 Am Jur, Workmen's Compensation § 284 et seq.
[6] 58 Am Jur, Workmen's Compensation § 554.

farming after the injury be used to set off the liability of the employer.

6. Workmen's Compensation—Interest—Interest Rate—Six Percent.

An interest computation by the Workmen's Compensation Appeal Board was properly made at the rate of six percent.

Appeal from the Workmen's Compensation Appeal Board. Submitted Division 3 June 4, 1974, at Grand Rapids. (Docket No. 18323.) Decided January 27, 1975.

Claim by Harry L. Miller against Midwest Foundry Corporation for workmen's compensation. Award of compensation affirmed by the Workmen's Compensation Appeal Board. Defendant appeals by leave granted. Affirmed.

*McCroskey, Libner, Van Leuven, Kortering, Cochrane & Brock, P. C.* (by *Seymour L. Muskovitz*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), for defendant.

Before: D. E. Holbrook, P. J., and T. M. Burns and R. L. Smith,* JJ.

R. L. Smith, J. In August, 1959, plaintiff began working for defendant as a molder. The molding job subjected plaintiff to excessive twisting, turning, and lifting. On September 13, 1967, plaintiff made his initial complaint of back trouble to a plant foreman. Plaintiff was off work for about a month receiving treatment for which defendant voluntarily paid him benefits. He returned to this same job and after a while began having back

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

trouble again. Plaintiff was subsequently laid up from July 30 to September 28, 1968, for which he also received benefits from defendant. Upon his return to work he sought and obtained an inspector's job. Eventually even this lighter work proved too much for plaintiff and he quit the foundry on December 8, 1969.

On March 19, 1970, plaintiff filed a petition for a hearing with the Workmen's Compensation Bureau seeking to receive additional compensation benefits. A hearing was held before a referee on January 13, 1971, following which a decision was handed down on August 17, 1971. The referee found that plaintiff sustained two injuries, one in September, 1967, and a reoccurrence of that injury in December, 1969. This decision set out a schedule of compensation benefits due plaintiff and ordered that they continue until further order of the board. Defendant filed for review of the referee's decision to the Workmen's Compensation Appeal Board.

In a four-to-three decision the appeal board upheld the referee's open award of compensation benefits. Upon leave granted defendant appeals the board's decision claiming that the appeal board was not properly impaneled and that the majority opinion applied the law incorrectly. We set forth additional facts from the record as the various issues are herein discussed.

*Did the appeal board err in submitting the case to a panel of the appeal board in violation of PA 1973, No. 73?*

Prior to July 23, 1973, MCLA 418.261; MSA 17.237(261) provided in part as follows:

"Any matter pending on review may be assigned to 4 members of the board for disposition. The composition of panels shall be alternated so that each member of

the board serves on panels with other members of the board with a frequency which is as substantially equal as possible. If the 4 members concur in the result it shall be final. If there is disagreement, the matter shall be reviewed by the full board and its order shall be final".

On July 23, 1973, this section was amended and given immediate effect. The new statute is as follows:

"(2) A matter pending on review shall be assigned to a panel of 5 members of the board for disposition. The composition of panels shall be alternated so that each member of the board serves on panels with other members of the board with a frequency which is as substantially equal as possible. The decision reached by a majority of the assigned 5 members shall be the final decision of the board. If a majority of the assigned 5 members are unable to agree, the matter shall be reviewed by the entire workmen's compensation appeal board." (PA 1973, No. 73, § 1, immediately effective July 23, 1973).

In a stipulation in the record, Chairman Gillman of the Workmen's Compensation Appeal Board concedes that this case was assigned on July 24, 1973, pursuant to the old statute, assigning as the reason therefor that the board was not notified of the signing of the new act by the Governor until July 25, 1973. The stipulation further indicates that when a dissent developed on the four member panel the case went on to the full board.

Defendant argues that the law is clear that this case should have been assigned to a five-man panel under the new statute, *supra,* and that there was time to remedy the assignment after July 25, 1973, by adding a fifth member to the panel. Defendant offers no excuse for its failure to object to the improper impaneling and its willingness to pro-

ceed until such time as an adverse decision was made. Nor does defendant argue that it was deprived of due process by the board's failure to comply with the new statute. Nothing in the record suggests to this Court that defendant was deprived of a fair hearing. Defendant's failure to object to the proceedings was tantamount to a waiver and consent to the hearing by the four-member panel and eventually by the entire board. We find no error in this technical assignment of error. We proceed to decision on the substantive issues raised.

*Did the appeal board err by holding that an open award for an occupational disease did not have to be based upon probability of continued disability?*

The majority opinion of the appeal board is confusing because of its treatment of *Lyczynski v Mohawk Lumber & Supply Co,* 33 Mich App 433, 190 NW2d 328 (1971). The majority opinion states that *Lyczynski* is distinguishable from the case at bar in that *Lyczynski* involved an injury whereas we have here an occupational disease case and then proceeds to find from the record that there is a factual basis for a finding of continuing disability as a matter of reasonable prediction as espoused by *Lyczynski* and the cases therein cited.

We quote from defendant's brief:

"We respectfully submit that it is completely incongruous to apply a different standard of measuring continuing disability in the occupational disease situation (Part VII) as opposed to a specific injury situation (Part II). There is no logic or legal basis upon which to premise such a distinction which four members of the Workmen's Compensation Appeal Board have attempted to create."

This conclusion of defendant, with which we con-

cur, is based upon MCLA 417.3; MSA 17.222 (presently MCLA 418.415; MSA 17.237[415]), which states:

"Sec. 3. If an employee is disabled or dies and his disability or death is caused by a disease and the disease is due to the nature of the employment in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement, and he shall be entitled to be furnished with medical and hospital services, all as provided in part 2 of this act."

Part II of the act provides that compensation shall be paid for the duration of disability. MCLA 412.9; MSA 17.159 (presently MCLA 418.351; MSA 17.237[351]). With these provisions in mind it is plain that the majority opinion was in error to distinguish *Lyczynski* as aforementioned. *Lyczynski* applies to every disability whether arising under Part II or Part VII (Presently Chap 3 and Chap 4 of the Workmen's Compensation Act).

Be that as it may the majority opinion can still be upheld on the basis of *Lyczynski* if the record contains evidence of probable continuing disability. The majority opinion quoted from the testimony of Dr. Meier as follows:

"It was my educated guess that he probably had a degenerating disc that had not herniated or ruptured out of its nest, so to speak, but it may well bulge against the containing ligaments depending on his activity. * * * I would predict that he would have trouble off and on with this back, depending on how much rough, heavy activity he puts his musculo-skeletal system to. He may be a candidate for a spinal fusion at some later date."

The majority members then stated:

"Plaintiff has met his burden of proof and established

the fact that he suffered an occupational injury and as a result is disabled from earning full wages at the work the nature of which caused the condition. The only medical evidence which supports this fact also shows that the prognosis for recovery is guarded and that future surgery * * * is a possibility.

"In the instant case plaintiff's exposure to causes and conditions characteristic of and peculiar to the business of defendant causes a bulging of the weakened disc against the spinal ligaments thus causing the pain which radiates into his limbs. Dr. Meier's prognosis for recovery or prediction as he stated it, was: 'I would predict that he would have trouble off and on with this back, depending on how much rough, heavy activity he puts his musculo-skeletal system to. He may be a candidate for a spinal fusion at some later date.' The referee and this appeal board having rejected the medical evidence which finds nothing wrong with plaintiff and having accepted the testimony of Dr. Meier, we then clearly have an individual who is disabled from earning full wages at the work the nature of which caused his condition. This appeal board must, therefore, apply the law as enacted and defined by the Legislature. We cannot award compensation according to what certain members of this board believe the law should be. There is no showing that work within plaintiff's capacity to perform is available to him."

When one couples this testimony with the legal principle that the findings of the Workmen's Compensation Appeal Board must be supported if there is any evidence whatever, *Drake v Norge Division, Borg-Warner Corp,* 48 Mich App 88; 210 NW2d 131 (1973) the conclusion is clear that the principle enunciated in *Lyczynski* was not violated. We find no error on this issue.

*Did the appeal board err in computing benefits?*

Both the majority and minority opinions found the inspection job was favored employment and that plaintiff took this work because of his inability to do the molding work. This Court has dealt

with this issue many times and has held that under the Workmen's Compensation Act it is the employee's loss of wage-earning capacity not the actual loss of wages which is compensable. *Grodzicki v Revere Copper & Brass, Inc,* 268 Mich 143; 255 NW 742 (1934); *Brown v Warren Iron & Metal Co,* 44 Mich App 458; 205 NW2d 276 (1973). As was pointed out in *Medacco v Campbell Wyant & Cannon Foundry Co,* 48 Mich App 217, 221; 210 NW2d 360 (1973):

"The rule is that '[I]t is loss of wage earning *capacity* —not actual loss of wages—which is compensable'. *Sims v R D Brooks, Inc,* 389 Mich 91, 93; 204 NW2d 139 (1973); MCLA 412.11; MSA 17.161 (now MCLA 418.371; MSA 17.237[371])".

The board's findings in this respect are sustained by the record.

Defendant also contends that plaintiff increased his income from farming activities. Plaintiff does not deny that he aspired to be a farmer and hoped some day that he would be a full-time farmer. During his employment with defendant, plaintiff carried on his farming activities on a farm acquired from his parents. At the time of the hearing before the referee, plaintiff was able to continue to a limited extent his farming activity with the assistance of his wife, his brother and a nephew. The appeal board's opinion as to plaintiff's farming activities was stated as follows:

"Plaintiff was a part-time farmer during all the period that he was employed by defendant. His earnings at this work cannot be used to determine his wage at the time of injury. *Buehler v University of Michigan,* 277 Mich 648; 270 NW 171 (1936). Nor can his earnings at this activity after the injury be used as a setoff against the liability imposed upon the employer by the

statute. *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956). Furthermore, the record presented here shows that plaintiff's capacity to perform the farm work has also been materially affected by the injury which he received even though his receipts from the farm have remained about the same."

Since these findings are sustained by the record we find no error.

*Did the appeal board err in granting interest on the award at the rate of 6%?*

We note that defendant does not complain that interest on the award should not be granted but only that interest should be computed at the rate of 5% and not 6%. The appeal board's position on this issue is stated in *Maxwell v General Motors Corp,* 1973 WCO 1075.

At the present time there is a split of authority on this question. In *White v Extra Labor Power of America,* 54 Mich App 370; 221 NW2d 214 (1974), it was held that a 5% figure was proper. In *Morris v Baker Auto Parts,* 57 Mich App 65; 225 NW2d 179 (1974), the 6% figure was approved. We choose to follow *Morris* and we affirm the Board's award of 6% interest.

All concurred.